UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOLEENE S.[1],

                            Plaintiff,

     -v-

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

---

1:20-CV-01695-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13)

Plaintiff Joleene S. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the following reasons, plaintiff's motion (Dkt. No. 9) is granted, the Commissioner's motion (Dkt. No. 11) is denied, and the case is remanded to the Commissioner for further proceedings.

---

[1] In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P. Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York, this Decision and Order will identify plaintiff using only her first name and last initial.

## BACKGROUND[2]

Plaintiff protectively filed applications for DIB and SSI on September 23, 2013, alleging disability beginning February 25, 2013. (*See* Tr. 99-112, 301-08)[3] Plaintiff's disability benefits application was initially denied on December 23, 2013. (Tr. 137-40) Plaintiff timely filed a written request for a hearing, and on February 17, 2016, a hearing was held before Administrative Law Judge David F. Neumann. (Tr. 66-96) Plaintiff, who was represented by counsel, testified at the hearing. (*Id.*) ALJ Neumann also received testimony from a vocational expert. (*Id.*) On April 13, 2016, ALJ Neumann issued a decision finding that plaintiff was not disabled under the Act. (Tr. 113-29) On August 16, 2017, the Appeals Council granted plaintiff's request for review and remanded the case for further review.[4] (Tr. 130-33)

On September 4, 2019, ALJ Timothy M. McGuan ("the ALJ") held a *de novo* hearing in Buffalo, New York, where plaintiff appeared with her attorney and testified.[5] (Tr. 45-64) A vocational expert also testified. (*Id.*) ALJ McGuan issued a decision on September 19, 2019, denying plaintiff's request for benefits. (Tr. 16-30) The Appeals

---

[2] The Court assumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[3] References to "Tr." are to the administrative record in this case.

[4] The Appeals Council remanded the case because the hearing was held on February 16, 2016 and a consultative examination of plaintiff was conducted a month later, on March 15, 2016. (Tr. 132-33) The ALJ considered the results of this examination in reaching the unfavorable disability determination but there was no evidence in the record that the evidence was proffered to plaintiff or her representative. (*Id.*) Upon remand, the ALJ was instructed to ensure that plaintiff and her representative were offered an opportunity for a hearing to address the new evidence. (*Id.*)

[5] At the hearing, the ALJ explained that because he was not the Judge for the previous proceedings, he would be deciding the matter *de novo* based on a review of all records.

Council denied plaintiff's request for review of the ALJ's determination on June 23, 2020, and this action followed. (Tr. 1-6)

Born on June 16, 1973, plaintiff was 39 years old on the date of the alleged disability onset date and has a tenth grade education. (Tr. 23, 28, 34, 49, 70) She attempted to obtain a GED but did not pass the test. (*Id.*) Plaintiff has prior relevant work experience as a conveyor tender. (*Id.*)

## DISCUSSION

I.      *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical

opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ first found that plaintiff meets the insured status requirements of the Act through December 31, 2018. (Tr. 21) The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset date of February 25, 2013. (*Id.*) At step two, the ALJ found that plaintiff has the severe impairments of panic disorder with agoraphobia; depressive disorder; post-traumatic stress disorder (PTSD); attention deficit hyperactivity disorder (ADHD); and social anxiety disorder. (*Id.*) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 22) Before proceeding to step four, the ALJ found that:

> [T]he claimant had the residual functional capacity to perform the full range of work at all exertional levels but with the following non-exertional limitations: cannot interact with the public; can frequently interact with co-workers and supervisors; and can do simple, unskilled work.

(Tr. 23-28) Proceeding to step four, the ALJ found that plaintiff was capable of performing her past relevant work as a conveyor tender. (Tr. 28-29) In the alternative, at step five, the ALJ considered plaintiff's age, education and RFC and found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as marker, kitchen helper and hospital cleaner. (*Id.*) The ALJ ultimately concluded that plaintiff has not been under a disability, as defined by the Act, from the alleged onset date, February 25, 2013, through the date of the decision, September 19, 2019. (Tr. 24)

IV.   _Plaintiff's Challenges_

Plaintiff argues that the ALJ erred in failing to account for her limitations in dealing with stress. (_See_ Dkt. No. 9 (Plaintiff's Memo. of Law)) For the following reasons, the Court agrees, and finds that remand is necessary on this basis.

An ALJ is required to specifically analyze a plaintiff's limitations in dealing with stress and how those difficulties may affect her ability to work. _See Haymond v. Colvin_, 1:11-CV-0631, 2014 U.S. Dist. LEXIS 68511 (W.D.N.Y. May 19, 2014). Social Security Regulation ("SSR") 85-15 explains that because "the reaction to the demands of work (stress) is highly individualized," the RFC assessment must reflect not merely the skill level that a plaintiff can perform, but also "the limitations created by an individual's response to the demands of work." SSR 85-15, 1985 WL 56757, at *6 (S.S.A. 1985). _See also Welch v. Chater_, 923 F. Supp. 17, 21 (W.D.N.Y. 1996) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments."). Therefore, before rendering an RFC determination for an individual who suffers from non-exertional limitations in their ability to handle stress, an ALJ is expected to "make specific findings about the nature of [the] claimant's stress, the circumstances that trigger it, and how those factors affect [her] ability to work." _Stadler v. Barnhart_, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) (internal citations and quotations omitted).

Here, plaintiff underwent a consultative psychiatric exam by Gregory Fabiano, Ph.D., in November of 2013. (Tr. 501-05) She reported symptoms of anxiety including experiencing panic attacks three to four times per week as well as difficulty concentrating. (Tr. 502) Dr. Fabiano concluded that plaintiff's attention, concentration, and memory skills

8

were mildly impaired. (Tr. 503) He further opined that she had mild to moderate limitations in her ability to deal with stress as a result of her psychiatric symptoms. (Tr. 504) Plaintiff underwent a second psychiatric examination by Dr. Fabiano in March of 2016. (Tr. 699-703) She reported anxiety symptoms that included excessive apprehension and worry; panic attacks; and minor visual hallucinations. (Tr. 703) Dr. Fabiano diagnosed plaintiff with unspecified depressive disorder; unspecified ADHD; and panic disorder. (Tr. 702) He again opinioned that plaintiff had mild to moderate limitations in her ability to appropriately deal with stress. (*Id.*)

The ALJ concluded that plaintiff's mental impairments did not prelude her from sustained work activity in accordance with the RFC. In reaching this determination, the ALJ gave great weight to Dr. Fabiano's November 2013 and March 2016 opinions as to plaintiff's mental abilities and impairments. (Tr. 27) However, nowhere in his decision does the ALJ specifically address Dr. Fabiano's opinion that plaintiff had a mild to moderate limitation in appropriately dealing with stress, nor does the ALJ perform the requisite individualized assessment of plaintiff's limitations in dealing with stress. Stated another way, the ALJ failed to make specific findings as to the nature of plaintiff's stress, the circumstances that trigger it, and how those factors affect her ability to work. *See Purpura v. Comm'r of Soc. Sec.*, 19-CV-01717, 2020 U.S. Dist. LEXIS 192924 (W.D.N.Y. Oct. 19, 2020) (remand appropriate where ALJ failed to properly evaluate plaintiff's individualized stress triggers and coping mechanisms and the "RFC [did] not contain any indication of how [p]laintiff's mechanisms for dealing with stress will be tolerated in the workplace.").

The Commissioner contends that the RFC's limitations of simple, unskilled work and no interaction with the public accounted for plaintiff's difficulties in handling stress. However, the ALJ failed to articulate how this RFC specifically addressed plaintiff's individual stress triggers and symptoms, including her record of agoraphobia, anxiety, and frequent panic attacks. The ALJ also did not clearly articulate how and why plaintiff could still perform the work described in the RFC despite her acknowledged limitations in handling stress. The ALJ's lack of explanation is contrary to the requirements set forth in the cases and regulations cited above. *See Stellmaszyk v. Berryhill*, 16 CV 09609, 2018 WL 4997515, at *28 (S.D.N.Y. Sept. 28, 2018) ("While it may be reasonable for an ALJ to account for a stress-based limitation by including, in the claimant's RFC, restrictions to simple work, with little interaction with others … it is not the function of this Court to supply its own rationale where the ALJ's decision is lacking or unclear."); *Smith v. Astrue*, 09-CV-470, 2011 WL 6739509, *7 (N.D.N.Y. Nov. 4, 2011) ("The ALJ did not make sufficient findings concerning [p]laintiff's particularized ability to deal with stress, other than to generically conclude that she was limited to 'low stress' work."); *Reider v. Colvin*, 15-CV-6157, 2016 WL 5334436, at *6 (W.D.N.Y. Sept. 3, 2016) ("A simple work limitation does not, in the absence of further explanation, appear to account for many of the limitations identified by [the consultative examiner], including [*inter alia*] assessed difficulties with attention and concentration [and] dealing with stress[.]").

Moreover, the ALJ's failure to conduct a more particularized analysis of the causes and symptoms of plaintiff's stress when fashioning the RFC cannot be dismissed as harmless. In addition to Dr. Fabiano's opinion, there is other evidence in the record which supports a finding that plaintiff had notable difficulties in her ability to handle stress, and

that these limitations directly affected her ability to work and maintain regular employment. Plaintiff was evaluated for her anxiety on February 23, 2013, at which time she reported to a nurse practitioner ("NP") that her work shift had recently changed by an hour because she had a panic attack "setting up the lines." (Tr. 444) She reported feeling dizziness and panic associated with the hallways of her work location and that she had been using personal days to avoid work. (*Id.*) Plaintiff reported moderate panic attacks multiple times per day. (*Id.*) She was diagnosed with a panic disorder and agoraphobia. (*Id.*) The NP prescribed medication and wrote a note excusing plaintiff from work. (*Id.*) On March 7, 2013, plaintiff was diagnosed with a generalized anxiety disorder in addition to her panic disorder with agoraphobia and was sent for a psychiatric evaluation. (Tr. 442-43) On March 27, 2013, plaintiff reported to a treating NP that she was undergoing counseling and had been prescribed two medications for her anxiety and panic disorders. (Tr. 440) She reported that while she was able to drive, she was still unable to go to the grocery store on her own. (*Id.*) During a visit on April 5, 2013, plaintiff's treating NP provided her with a note to remain out of work until she started therapy and stabilized her anxiety. (Tr. 492-93) During an examination on May 1, 2013, plaintiff was anxious and reported panic attacks when going outside. (Tr. 495-96) During a doctor's visit on September 25, 2013, plaintiff complained of anxiety with panic attacks and further reported that she felt anxious all of the time. (Tr. 654) On October 2, 2013, plaintiff reported high anxiety and panic with feelings of hopelessness due to her panic. (Tr. 532) On October 31, 2013, plaintiff reported that she had difficulty in crowded places and that she kept to herself due to her panic and anxiety. (Tr. 534)

Plaintiff saw psychiatric nurse practitioner ("NP") Gerald Frisicaro at Spectrum Human Services for a psychiatric assessment on December 26, 2013. (Tr. 709) NP Frisicaro noted that plaintiff shifted in her seat, exhibited distractibility, and that her thought process had attentional deficits. (*Id.*) He diagnosed her with panic disorder and agoraphobia. (*Id.*) On January 21, 2016, NP Frisicaro opined that plaintiff was "unable to meet competitive standards" in several areas, including "dealing with the stress of semiskilled and skilled work" and that she was "seriously limited" in dealing with normal work stress. (Tr. 675-76) During a visit on May 16, 2016, NP Frisicaro noted that plaintiff continued to struggle with panic attacks, which were frequent and consistent whenever she was in a social situation. (Tr. 711) Examination revealed that plaintiff had marked attentional and comprehensional deficits, and that she became easily overwhelmed and frustrated. (*Id.*) On March 29, 2017, plaintiff reported to NP Frisicaro that while she had experienced some improvements on medication, she was still experiencing social anxiety and panic attacks, and that she infrequently left her home. (Tr. 879)

Other evidence in the record corroborates the anxiety and panic disorders described in plaintiff's medical records and further indicates that these mental impairments had a significant impact on plaintiff's ability to handle stress in a work environment. The record shows that plaintiff maintained steady employment as a general laborer operating a conveyor belt for the same employer for approximately fifteen years, from January of 1998 through February 25, 2013. (Tr. 73, 50) Plaintiff testified that it was in February of 2013 that her panic and anxiety became so severe she could no longer work. (*Id.*) Plaintiff testified that when she experiences a panic attack, she feels hot and cold at the same time, her heart races, and she becomes very nervous. (Tr. 50, 54. 75)

She needs to leave wherever she is immediately and lay down, often falling asleep. (*Id.*) Plaintiff testified that her panic attacks last anywhere from five minutes to twenty minutes and that she has trouble functioning afterwards. (Tr. 54, 75) Plaintiff explained that her anxiety affects her ability to go out in public and be around others. (Tr. 55) Plaintiff testified that she does not know how to handle stress, and that when she feels stress, she will go in a bathroom and cry. (Tr. 56) Plaintiff told Dr. Fabiano that she does not have many friends and that her family relationships are "terrible." (Tr. 22) Nowhere in his decision does the ALJ explain how the RFC addresses these symptoms.

Given the evidence outlined above and the considerations articulated in SSR 85-15, the Court finds that the ALJ's failure to explain how plaintiff's stress limitations are accounted for in the RFC is an error that requires remand. On remand, the Commissioner shall consider the extent, if any, that plaintiff's difficulties with stress impact her ability to perform the non-exertional demands of unskilled work on a sustained basis. In conducting this analysis, the Commissioner should be sure to consider how plaintiff's limitations in handling stress affect her ability to interact with supervisors, co-workers and the public, and how, if at all, such limitations are accounted for in the RFC.

Plaintiff also argues that the ALJ erred by failing to provide good reasons for rejecting the opinion of treating NP Gerald Frisicaro. (*See* Dkt. No. 9 (Plaintiff's Memo. of Law)) The Court agrees and finds that remand is necessary on this basis as well.

At the time plaintiff filed her disability claim, nurse practitioners did not qualify as "treating sources" and therefore their opinions were not entitled to "controlling weight."

*See* 20 C.F.R. §§§ 404.1527(a)(2); 404.1513(d); 416.913(d).[6] However, opinions from "other sources," such as nurse practitioners "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *See* SSR 06-03p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006). Notably, this directive has greater relevance within the context of "mental disabilities, which by their nature are best diagnosed over time." *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 629 (S.D.N.Y. 2006). While an ALJ may reject the opinion of an "other source" which is inconsistent with the claimant's treatment records, *Bulavinetz v. Astrue*, 663 F. Supp. 2d 208, 212 (W.D.N.Y. 2009), the regulations require the ALJ to properly explain the weight given to such opinions in such a way that "allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. §§ 404.1527(f)(2); 416.927(f)(2).

Plaintiff received mental health treatment from NP Frisicaro between December 26, 2013 and March 29, 2017. (Tr. 709-64) On January 21, 2016, NP Frisicaro completed a mental residual functional capacity questionnaire on plaintiff's behalf. (Tr. 673-77) Frisicaro indicated that he saw plaintiff on a monthly basis and that her diagnosis included major depressive disorder-moderate; panic disorder-agoraphobia; and PTSD-chronic. (*Id.*) He noted that plaintiff continued to be socially isolated for fear of panic attacks and that her prognosis was poor to fair. (*Id.*) NP Frisicaro found that plaintiff suffered from significant mental functional limitations which would severely impair her ability to engage in sustained work activity. (*Id.*) For example, he concluded that plaintiff was "unable to

---

[6] The medical opinion evaluation rules at 20 C.F.R. § 404.1527 apply to claims, like plaintiff's, filed prior to March 27, 2017. The evaluation rules in 20 C.F.R. § 404.1520(c) apply to claims filed on or after that date. *See* Tr. 116; 20 C.F.R. §§ 404.1520(c); 404.1527.

meet competitive standards" in areas such as maintaining regular attendance and completing a normal workday and workweek without interruptions from psychologically based symptoms. (*Id.*) He opined that plaintiff was "seriously limited" in the functional areas of, *inter alia*, remembering work-like procedures; maintaining attention in two-hour segments; sustaining an ordinary routine without special supervision; and carrying out detailed instructions. (*Id.*)

The ALJ gave "little weight" to NP Frisicaro's opinion. In explaining his rationale, the ALJ offered only a boilerplate and conclusory assertion that Frisicaro's opinion was "inconsistent with the overall medical record." (Tr. 27) The ALJ provided no explanation or examples as to how NP Frisicaro's opinions were inconsistent with either his own treatment notes or the other medical evidence in the record. The ALJ also failed to provide any specific citations to the record in support of his conclusion, which was erroneous. *See Matthew v. Comm'r of Soc. Sec.*, 1:17-CV-00371, 2018 WL 4356495, at *5 (W.D.N.Y. Sept. 13, 2018) (remanding where ALJ failed to provide specific reasons for discounting the opinion of plaintiff's mental health counselor and made only conclusory assertions that the counselor's assessment was inconsistent with treatment records); *Robinson v. Berryhill*, 17-CV-8842, 2019 WL 2453346, at *9 (S.D.N.Y. Jan. 25, 2019) (citations omitted), *report and recommendation adopted sub nom. Robinson v. Comm'r of Soc. Sec.*, 2019 WL 1004140 (S.D.N.Y. Feb. 28, 2019) (finding the ALJ's conclusory reasons for rejecting a treating nurse practitioner's opinion, without offering an explanation or citations to the record, was insufficient and prevented the Court's ability to conduct proper judicial review).

Here, NP Frisicaro was the only treating provider that supplied a comprehensive evaluation and opinion of plaintiff's work-related, mental functional limitations during the relevant period. As such, his opinion was generally entitled to at least some, if not more, consideration. *See Justin v. Comm'r of Soc. Sec.,* 20-CV-00600, 2021 U.S. Dist. LEXIS 177699 (W.D.N.Y. Sept. 17, 2021). *See also Mebane v. Comm'r of Sec. Sec.*, 6:14-CV-06685, 2016 WL 519038, at *6 (W.D.N.Y. Feb. 10, 2016) ("[H]ere, NP Alescio's opinion was the only opinion, from a longitudinal treating source, regarding plaintiff's work-related functional limitations . . . Under these circumstances, NP Alescio's opinion is entitled to greater consideration"). Furthermore, as cited above, the medical and other evidence in the record did lend some support to NP Frisicaro's opinion that plaintiff's mental impairments significantly impair her ability to perform substantial gainful activity. Without a more robust explanation by the ALJ as to why NP Frisicaro's assessed limitations were unsupported by the record as a whole, the Court is unable to conduct a meaningful review of the ALJ's reasoning or conclude that the RFC is based on substantial evidence. *See Sutherland v. Barnhart*, 322 F.Supp.2d 282, 289 (E.D.N.Y. 2004) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims."); *Nix v. Astrue*, 07-CV-344, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009) (noting that "an ALJ . . . may not ignore an entire line of evidence that is contrary to [his] findings") (internal quotation marks omitted).

Lastly, the Court notes that the ALJ found that plaintiff's activities of daily living were "inconsistent with disabling symptoms and limitations." (Tr. 27) While the ALJ was permitted to consider plaintiff's activities of daily living when rendering the RFC, he was

also required to explain "how the performance of these limited activities of daily living translates into the ability to perform substantial gainful work at all exertional levels in a typical competitive workplace environment." *Miller v. Colvin*, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015) (citations omitted). The ALJ failed to do so here. Indeed, the record reflects that plaintiff was able to complete household chores, groom herself, and that she took a road trip with her partner, who is employed as a truck driver. However, these activities are not necessarily probative of her ability to handle work-based stress or interact appropriately with others in work environment. *See McGregor v. Astrue*, 993 F. Supp. 2d 130, 142 (N.D.N.Y. 2012) (a claimant need not be an invalid to be found disabled under the Act) (internal citations and quotations omitted); *Hash v. Colvin*, 3:13-cv-42, 2014 U.S. Dist. LEXIS 185276 (N.D.N.Y. Aug. 21, 2014) ("Under the circumstances and given the medical opinions of record, it was error for the ALJ to infer an ability to handle the stress demands of competitive, remunerative employment on a sustained basis from the ability to perform very basic activities of daily living.").

<u>CONCLUSION</u>

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is granted (Dkt. No. 9), defendant's motion for judgment on the pleadings is denied (Dkt. No. 11), and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

**SO ORDERED.**

Dated:      November 1, 2022
            Buffalo, New York

                                            MICHAEL J. ROEMER
                                            United States Magistrate Judge